HENRY S. MILLER COMPANY,
Trustee, et al., Appellants,

v.

Harold WOOD et al. Appellees.

No. 8643.

Court of Civil Appeals of Texas,
Texarkana.

April 24, 1979.

Rehearing Denied June 26, 1979.

Michael R. Cooper, Cooper, Hayner, Miller, Long & Owen, Dallas, Leo A. Kissner, Leo A. Kissner & Associates, Houston, for appellants.

Edmund R. Wood, Chancellor & Wood, Roger D. Bush, Dallas, for appellees.

RAY, Justice.

This is a suit to recover sums paid for delinquent taxes. Harold E. Wood and wife, Ruth K. Wood, and Warren B. Wood

and wife, Ruth Ann Wood, (Wood), appellees (plaintiffs), brought suit against Henry S. Miller Company, Trustee (Miller Company), seeking recovery of certain ad valorem taxes which Wood had paid to various taxing agencies in Fort Bend County. Miller Company sought indemnification in its action against Dr. Bernard Waidhofer, Dr. Matthew D. Burnett, Dr. Ronald R. Novasad, Dr. Bill J. McDougal and Frederick James Gaido, Jr., a joint venture, for whom Miller Company had purchased the property from Wood. The trial court awarded Wood $4,460.00, plus interest, and costs against Miller Company and awarded indemnification in favor of Miller Company against the members of the joint venture. Wood had paid the ad valorem taxes after foreclosing under four deeds of trust upon the real property which had been given as security for the purchase price of the land by Miller Company for the joint venture. At the foreclosure sale, Wood purchased the land, paid the taxes which were later found to be delinquent, and then instituted suit for reimbursement of the moneys paid to the taxing authority. The case was tried to the court without the aid of a jury upon stipulated facts.

Miller Company and the members of the joint venture have perfected their appeal and submit three points of error for our consideration.

Appellants assert that the trial court erred in holding Miller Company and the members of the joint venture personally liable for the delinquent ad valorem taxes paid by Wood because the deeds of trust and notes expressly stated that appellants would have no personal liability in the event of default; that the amount expended for ad valorem taxes by mortgagees, Wood, became a part of the lien upon the land and no right to a personal judgment exists against the mortgagors; and, that Wood was not entitled to a right of subrogation in an in personam action for ad valorem tax payments because such right is limited to an in rem action only.

When Miller Company purchased the land from Wood, it executed notes and deeds of trust which respectively contained the following clauses:

"The maker of this note shall have no personal liability for the payment of this note, and in the event of default, the holder hereof shall have the mortgaged property alone as security for the payment of this note."

"Anything herein to the contrary notwithstanding, the undersigned shall have no personal liability for the payment of the note secured hereby, and in the event of default, the holder of said note shall have the mortgaged property alone as security for the payment of said note . . . .".

Because of the non-payment of the notes, Wood accelerated and matured the notes on February 3, 1976, subsequently foreclosing under the deeds of trust and purchasing the property at the foreclosure sale. During 1975, Miller Company had failed to pay the school and state and county taxes.

Appellees' suit against Miller Company is based on a covenant in the deeds of trust which provides, in part, the following:

"THE UNDERSIGNED FURTHER COVENANT with said Trustee that it will at all times, during the continuance of this trust, . . . pay, before the same shall become delinquent, all taxes and assessments that may be levied or assessed against said premises or any part thereof. And it is especially agreed that if the undersigned shall fail . . . to pay such taxes, then the said . . . taxes may be paid by the legal holder of said note, and sums so expended shall be a demand obligation and become part of the debt hereby secured, and shall draw interest . . . or at the option of the holder of the debt secured hereby, the entire principal indebtedness may be declared due, and be collected in any manner provided in this instrument, or provided by law."

The case was presented on stipulated facts, but not strictly in compliance with the rule on an agreed case as provided by Tex.R.Civ.P. 263. Where, however, the parties stipulate all the facts of an action,

though not literally in compliance with the rule, the stipulation may be treated as a submission upon an agreed statement. 4 McDonald's, Texas Civil Practice, Sec. 16.03, p. 2 (1971); cf. *Parsons v. Watley*, 492 S.W.2d 61 (Tex.Civ.App. Eastland 1973, no writ), where the stipulations did not purport to contain all the facts and were not treated as an agreed statement by the court. If a case is submitted on an agreed statement of facts, the trial court and the reviewing court are limited to the agreed facts and cannot make any findings of fact not conforming to the agreed facts. *Jay v. Devers*, 563 S.W.2d 880, 881 (Tex.Civ.App. Eastland 1978, no writ). The trial judge, however, made findings that were in conformity with the stipulated facts.

## SUBROGATION

A mortgagee who pays taxes in order to protect his interests in the mortgaged property is entitled to be subrogated to the lien created by the tax assessment and to be reimbursed for the amount so paid, but will only be able to enforce his tax lien as a part of the mortgage debt. *Stone v. Tilley*, 100 Tex. 487, 101 S.W. 201 (1907); *The Praetorians v. State*, 53 S.W.2d 334 (Tex.Civ.App. Waco 1932, writ ref'd); *Wood v. Scott*, 48 S.W.2d 1024 (Tex.Civ.App. Waco 1932, writ ref'd); 53 Tex.Jur.2d Subrogation, Sec. 39 (1964).

In *Stone v. Tilley*, supra, J. E. Stone had executed a deed of trust to N. J. S. Lacy upon a piece of property in the City of Waco. The city subsequently foreclosed upon the property for delinquent taxes and, in order to protect his mortgage, Lacy paid off the judgment. Lacy then foreclosed under the deed of trust and sold the property for $2,000.00. He then sued out an execution under his tax judgment which he had purchased from the City of Waco, against the mortgagors, the Stones, to recover $365.41 paid to discharge the tax judgment in favor of the city. The district court and the court of civil appeals both held that Lacy had a cause of action against the Stones based on subrogation. The Supreme Court reversed, holding that Lacy could only enforce his claim as part of the mortgage debt and had no right of action against the Stones personally. The court stated:

". . . Holding a mortgage upon the land, Lacy had the right to discharge the taxes in order to protect his mortgage. He acquired whatever right would accrue to a mortgagee from such payment and no more, which by foreclosure of the mortgage was to enforce the collection of the sum paid against the land. . . . the mortgagee only acquires the right to enforce the taxes so discharged as a part of the mortgage debt, and it must be enforced at the same time that the mortgage is foreclosed for the debt secured thereby. Lacy acquired no right of action against the plaintiffs in error, and could not maintain a suit against them to reimburse himself, for the taxes paid in this case. . . ."

What Lacy was required to pay for the protection of his mortgage did not constitute a separate and independent lien upon the land. It became a lien only in connection with and because of the mortgage, and could not exist independent of it. When Lacy foreclosed his mortgage under the power of sale contained in it, it was necessary for him to include the amount he had paid for taxes on the land, if he expected to collect that sum, for the only right that he had arose out of his mortgage, and when by the foreclosure proceeding, he satisfied that instrument, his right and claim against the Stones was likewise satisfied.

To the same effect was the ruling in *The Praetorians v. State*, supra. The Praetorians had foreclosed their deed of trust lien against Buell Lumber and Manufacturing Company and purchased the property in satisfaction of the debt at the foreclosure sale. The state had assessed taxes which the lumber company had failed to pay. The state sought foreclosure under its tax lien and The Praetorians sought indemnification from the lumber company if the tax lien was foreclosed in favor of the state. The trial court foreclosed the tax lien on the property in favor of the state, but refused

judgment in favor of The Praetorians against the lumber company. The Praetorians appealed. The court of civil appeals held that had The Praetorians paid the taxes prior to their foreclosure of the deed of trust it would not have been entitled to a personal judgment against the lumber company for the taxes so paid, but would have been limited in its recovery to a foreclosure of a lien on the property for the amount of such taxes. The court stated:

" . . . The fact that it has foreclosed its lien and is now the owner of the property and may now be compelled to pay such taxes in order to protect its title, does not give it any greater right. It is, therefore, not entitled to a personal judgment against the lumber company for the amount of taxes which it may be required to pay in order to redeem the property from the judgment in favor of the state. The trial court properly denied the appellant's prayer for such judgment."

It therefore appears to be the rule in Texas that one who forecloses under a deed of trust is not entitled to a personal judgment against a mortgagor for taxes paid by the mortgagee either before or after foreclosure under a deed of trust.

In the present case, we construe the language in the notes and deeds of trust to mean that any taxes which became due before foreclosure became a part of the secured debt and that Miller Company was not personally liable because of the contractual provisions limiting liability and because of the ruling of the courts in *Stone v. Tilley*, supra, and *Praetorians v. State*, supra.

Wood asserts that since they had a grazing lease on the property they had to pay the taxes in order to protect their lease. We find that argument to be without merit because Wood had already foreclosed under their deeds of trust when the taxes were discovered to be due. Wood did not pay the taxes to protect their lease, but paid the taxes as owners of the property to protect their title. Whatever leasehold interest Wood had was merged with the fee simple title upon foreclosure and purchase of the property by Wood at the foreclosure sale.

Payment of delinquent taxes thereafter was to protect the title of Wood.

The judgment of the trial court is reversed and judgment is here rendered that appellees take nothing and that all costs be assessed against appellees.