**John A. JACKSON and William H. Bowie, Appellants,**

v.

**STONEBRIAR PARTNERSHIP and Marborough Texas Properties, Inc., Appellees.**

No. 05–95–00924–CV.

Court of Appeals of Texas, Dallas.

July 2, 1996.

Rehearing Overruled Aug. 14, 1996.

sion and stipulation of evidence and a factual summary in the Court's file."

Raymond R. Fernandez, Jr., Mary Jo Vida, Delbert L. Gibbs, Fernandez Forgerson & Knebel, P.C., Dallas, for Appellants.

Stephen C. Gleboff, Hughes & Luce, L.L.P., Arthur J. Anderson, Winstead Sechrest & Minick, P.C., Dallas, for Appellees.

Before LAGARDE, WRIGHT and WHITHAM,[1] JJ.

WHITHAM, Justice (Retired).

This is a suit seeking reimbursement from a mortgagor for real estate taxes paid by a mortgagee after deed of trust foreclosure. The appellant-mortgagees, John A. Jackson and William H. Bowie, sued the appellee-mortgagor parties, Stonebriar Partnership and Marborough Texas Properties, Inc. ("Stonebriar") for reimbursement. The parties filed cross-motions for summary judgment. The trial court denied Jackson and Bowie's motion and granted Stonebriar's motion. Jackson and Bowie appeal from the resulting take-nothing judgment in favor of Stonebriar. The facts are undisputed. The single issue before us is whether Texas law provides Jackson and Bowie an equitable subrogation cause of action against Stonebriar for the amount of property taxes paid by Jackson and Bowie after the foreclosure attributable to the time period of January 1, 1990 to August 7, 1990, the date of foreclosure. We conclude that Jackson and Bowie have no cause of action. Accordingly, we affirm.

## THE PARTIES' APPROACH

■ Unlike Texas cases cited and discussed by the parties, here the parties do not

---

1. The Honorable Warren Whitham, Justice, Court of Appeals, Fifth District of Texas at Dallas, retired, sitting by assignment.

advance their respective positions by reference to the provisions of any of the contractual documents pertaining to this real estate transaction. Instead, we are asked to decide the issue on principles enunciated in cases treated by the parties as controlling disposition of this appeal as a matter of law. We take this appeal as given us by the parties and proceed accordingly to dispose of Jackson and Bowie's sole point of error in which Jackson and Bowie contend that the trial court erred in granting Stonebriar's motion for summary judgment and in denying summary judgment in favor of Jackson and Bowie. When both parties file motions for summary judgment and one such motion is granted, then the trial court's judgment is final and appealable and, on appeal, this Court should determine all questions presented. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958).

## FACTUAL BACKGROUND

Here are the undisputed facts. On May 15, 1986, Jackson and Bowie sold the property to John P. Collins and each took back a deed of trust. On the same day, Collins deeded the property to Stonebriar. In August 1990, Jackson and Bowie foreclosed and purchased the property at the foreclosure sale. Jackson and Bowie failed to take 1990 property taxes into account in calculating their bid at foreclosure. Instead, Jackson and Bowie based their bid solely on the projected deficiency amount following foreclosure, and the amount for which Jackson and Bowie thought they could sell the property.

Taxes were assessed for 1990 in October 1990. These taxes became due in January 1991. Despite being the record owner of the property from January 1, 1990, through August 7, 1990, Stonebriar did not and will not pay the taxes arising during the period of ownership. After foreclosure, Jackson and Bowie paid the 1990 property taxes and filed suit against Stonebriar, alleging that Jackson and Bowie were entitled to a personal judgment against Stonebriar for the 1990 taxes

**2.** In their brief, Jackson and Bowie advise us that the parties here are parties to cause number 94–50119–367, pending in the 367th Judicial District Court, Denton County, Texas, regarding taxes on

attributable to the period of time before the foreclosure.[2]

## THE ISSUE BEFORE US

Jackson and Bowie insist that the taxes paid by them were neither assessed, payable, nor due until after the foreclosure. Hence, Jackson and Bowie argue that they paid taxes on the property for 1990 in order to protect their ownership interest in the property and not as a volunteer. Jackson and Bowie insist that this non-volunteer status has been extended in application to situations where taxes were paid subsequent to foreclosure. Thus, Jackson and Bowie reason that they are entitled to subrogation for amounts they paid relating to property taxes from January 1, 1990 to August 7, 1990. Jackson and Bowie explain their reasoning in their reply brief: they "were neither paying *delinquent* property taxes, nor did they pay any amounts to protect a mortgage interest." (*emphasis in original*). Indeed, Jackson and Bowie refine their explanation: "[they] had previously foreclosed upon the property in August of 1990, and at that time there were no tax liens or other encumbrances which were adversely affecting their ownership." For the reasons that follow, we conclude that Jackson and Bowie's argument based on the absence of *"delinquent"* taxes is of no merit. As will be seen, there *were* tax liens on the property when Jackson and Bowie foreclosed upon the property in August of 1990.

## THE TAX LIENS

On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year. Act of May 25, 1983, 68th Leg., R.S., ch. 851, § 22, 1983 Tex. Gen. Laws 4819, 4828, *amended by* Act of May 30, 1993, 73rd Leg., R.S., ch. 1031, § 3, 1993 Tex. Gen. Laws 4440, 4440–41 (current version at TEX. TAX CODE ANN. § 32.01(a) (Vernon Supp.1996)). Under Texas law, a property owner's liability for ad valorem taxes for any given year arises as of January 1

that part of the property situated in Denton County related to Stonebriar's period of ownership in 1990.

of that year regardless of when the tax is assessed. *Matter of Midland Indus. Serv. Corp.*, 35 F.3d 164, 167 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1359, 131 L.Ed.2d 216 (1995) (rejecting assertion that taxes are not incurred until tax rate is set and the taxes are payable, thus rejecting argument that tax is incurred on the date it is assessed).[3]

## CONTROLLING TEXAS CASES

 When a mortgagee forecloses his mortgage under the power of sale contained in it, it is necessary for him to include the amount he has paid for taxes on the land, if he expects to collect that sum. *See Stone v. Tilley*, 100 Tex. 487, 101 S.W. 201, 202 (1907). The only right that the mortgagee had arose out of his mortgage, and when, by the foreclosure proceeding, he satisfied that instrument, his right and claims against the mortgagor were likewise satisfied. *Stone*, 101 S.W. at 202. This issue again arose, and the court again rejected a mortgagee's attempt to sue the mortgagor for property taxes, in *The Praetorians v. State*, 53 S.W.2d 334 (Tex.Civ.App.—Waco 1932, writ ref'd). There the court pointed out that "On January 1, 1927, the property was *assessed* for the taxes ...." (emphasis added). *The Praetorians*, 53 S.W.2d at 334. Thus, it appears that the statutory attachment of lien is to be treated as the "assessment" and not the later October determination of the dollar amount of that "assessment." In this regard, *The Praetorians* proceeds to teach that it makes no difference in the application of *Stone* that the mortgagee has foreclosed its deed of trust lien and is now the owner of the property when later compelled to pay the taxes in order to protect its title. *See The Praetorians*, 53 S.W.2d at 335. Had the mortgagee prior to the foreclosure of the deed of trust paid the amount of taxes due, it would not have been entitled to a personal judgment against the debtor for the taxes so paid, but would have been limited in its recovery to a foreclosure of its lien. The fact that it has foreclosed its lien and is now the owner of the property and may now be compelled to pay such taxes in order to protect its title, does not give it any greater right. *See The Praetorians*, 53 S.W.2d at 335. Hence, the mortgagee is not entitled to a personal judgment against the mortgagor for the amount of taxes which it may be required to pay. *The Praetorians*, 53 S.W.2d at 335.

The impact of the January 1 statutory lien on the property has been addressed in yet a different way. A mortgagee who pays taxes in order to protect his interests in the mortgaged property is entitled to be subrogated to the lien created by the tax assessment and to be reimbursed for the amount so paid, but will only be able to enforce his tax lien as a part of the mortgage debt. *Henry S. Miller Co. v. Wood*, 584 S.W.2d 302, 304 (Tex.Civ. App.—Texarkana 1979), *aff'd*, 597 S.W.2d 332 (Tex.1980). It therefore appears to be the rule in Texas that one who forecloses under a deed of trust is not entitled to a personal judgment against a mortgagor for taxes paid by the mortgagee *either before or after foreclosure* under a deed of trust. *Henry S. Miller Co.*, 584 S.W.2d at 305 (emphasis added). Because in the present case Jackson and Bowie paid the taxes after foreclosure, we emphasize that part of the court's above holding in *Henry S. Miller*:

> [O]ne who forecloses under a deed of trust is not entitled to a personal judgment against a mortgagor for taxes paid by the mortgagee *after foreclosure* under a deed of trust.

*Henry S. Miller Co.*, 584 S.W.2d at 305 (emphasis added). We point out that the court cited and quoted from *The Praetorians*, 53 S.W.2d at 335, in reaching that part of its holding. *See Henry S. Miller Co.*, 584 S.W.2d at 305.

Later, in two cases decided the same day in 1980, our supreme court in each case denied a mortgagee's effort to pay taxes post-foreclosure and then sue the mortgagor for recovery. *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 339 (Tex.1980); *see Wood v. Henry S. Miller Co.*, 597 S.W.2d 332, 333 (Tex.1980). In both cases, the su-

---

**3.** See *Shaw v. Phillips Crane & Rigging*, 636 S.W.2d 186, 187–88 (Tex.1982), *appeal dism'd*, 459 U.S. 1191, 103 S.Ct. 1169, 75 L.Ed.2d 422 (1983) (chronology of events in a process of rendition, assessment, and collection of ad valorem taxes).

preme court made clear that the mortgagee should account for unpaid taxes at foreclosure in determining the amount of its bid. *Henry S. Miller Co.*, 597 S.W.2d at 333; *Smart*, 597 S.W.2d at 339. If the mortgagee neglects to enforce its right to recover unpaid taxes as a part of its foreclosure proceedings, it is not now entitled to an additional right to a personal judgment. *See Henry S. Miller Co.*, 597 S.W.2d at 333. Indeed, in *Smart* the supreme court was urged to follow the rule in Pennsylvania cases that hold that a mortgagee who, after foreclosing and purchasing the property at the foreclosure sale, pays taxes assessed against the former owner, is subrogated to the taxing authority's right to maintain a personal action against the former owner for the amount of the taxes. *See Smart*, 597 S.W.2d at 339. Citing *The Praetorians*, the supreme court declined to follow the Pennsylvania rule. *Smart*, 597 S.W.2d at 339.

## TEXAS LAW DOES NOT PROVIDE JACKSON AND BOWIE AN EQUITABLE SUBROGATION CAUSE OF ACTION

Before concluding this opinion, we must address the one Texas case which Jackson and Bowie insist requires that we reverse the trial court's judgment in favor of Stonebriar and render judgment in favor of Jackson and Bowie. *See Burkhardt v. Lieberman*, 138 Tex. 409, 159 S.W.2d 847 (1942). In their brief, Jackson and Bowie assert that *Burkhardt* "represents the only Texas authority found which specifically addresses non-delinquent taxes assessed and paid after foreclosure." We disagree that *Burkhardt* addresses the issue of non-delinquent taxes assessed and paid after *foreclosure under a deed of trust.* Close reading of *Burkhardt* discloses that the only taxes that Lieberman recovered following a post-deed of trust foreclosure by a third-party bank were those on only one of the six tracts involved and on which Lieberman claimed title, not through the deed of trust foreclosure sale, but by virtue of a vendor's lien note Lieberman had separately obtained from the holder. *See Burkhardt*, 159 S.W.2d at 854.

In *Burkhardt*, a bank foreclosed on April 6, 1937, on six tracts comprising 71.6 acres owned by the Burkhardts. One of the tracts consisted of 25 acres. Lieberman purchased the six tracts at the foreclosure sale. As to the 25–acre tract at issue, Lieberman, on May 18, 1937, thereafter acquired an outstanding vendor's lien note from the Burkhardts' grantor, Holm. In pleadings pertaining to the 25–acre tract, the Burkhardts tendered into court whatever amount the court determined to be necessary to reimburse Lieberman for the amount he paid out on the Holm note and offered to do whatever equity the court required of them in connection with the suit. Hence, the only taxes Lieberman was allowed to recover in *Burkhardt* were those that accrued post-foreclosure on the 25–acre tract to which Lieberman could claim title, not through deed of trust foreclosure sale, but by virtue of the vendor's lien note he had separately obtained. Indeed, Lieberman was not allowed to recover delinquent taxes for the six years 1931 to 1936, which preceded the deed of trust foreclosure. In denying Lieberman recovery for taxes paid for these six years, the court stated that one who pays taxes due on property of another, without request by debtor or any contractual right to do so or any joint liability therefore, is a volunteer and is not entitled to reimbursement. *Burkhardt*, 159 S.W.2d at 853. Hence, a person holding a mortgage can recover taxes paid to protect his lien provided he includes the same in the amount for which he forecloses, otherwise he has no right to reimbursement. *Burkhardt*, 159 S.W.2d at 853 (citing *Stone*, 101 S.W. 201 at 202). Therefore, the court in *Burkhardt* did not allow recovery of taxes paid by a person buying at a deed of trust foreclosure sale, but only allowed recovery by that person on a separate, distinct theory not before us in the present case. It follows, therefore, that Jackson and Bowie's reliance on *Burkhardt* is misplaced and that *Burkhardt*, like the long line of authorities discussed above, compels the conclusion that Jackson and Bowie's equitable subrogation claim against Stonebriar fails.

In light of our opinion thus far, we conclude that the trial court properly granted

Stonebriar's motion for summary judgment and properly denied Jackson and Bowie's motion for summary judgment. We reach this conclusion because Texas law does not provide the mortgagee an equitable subrogation cause of action against the mortgagor for the amount of taxes paid by the mortgagee after foreclosure under deed of trust attributable to the time period of January 1 to the date of foreclosure, regardless of the date of foreclosure. Therefore, we conclude further that the question of whether or not the taxes at issue were "assessed," "payable," "due," or "delinquent" at foreclosure is of no moment. We reach this conclusion because on January 1 of each year a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year. Hence, January 1 becomes the crucial date and not the dates of subsequent events mandated as the tax collection process unfolds during the tax year. Hence, we conclude further that the existence of the tax lien on January 1 requires a mortgagee to take into account, in calculating its bid at foreclosure, the amount of taxes attributable to the time period of January 1 to the date of foreclosure, if it expects to collect that sum. Consequently, it follows that a mortgagee foreclosing under a deed of trust does not have an equitable subrogation cause of action on which the mortgagee may recover a personal judgment against that mortgagor for taxes paid by the mortgagee either before or after foreclosure under a deed of trust. In the present case, therefore, Jackson and Bowie have no equitable subrogation cause of action entitling them to recover a personal judgment against Stonebriar for taxes paid by them after the August foreclosure. Every day in Texas, taxes for a given year are estimated at real estate closings occurring between January 1 and later assessment in October. Jackson and Bowie could have done likewise at this deed of trust foreclosure.

We overrule Jackson and Bowie's sole point of error.

Affirmed.